# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **AUTO-OWNERS INS. CO.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:15-CV-2188-KOB** |
| **BRIAN AND CHERISE MORRIS,** | ] | |
| | ] | |
| **Defendants,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **THE PARNELL INS. AGENCY,** | ] | |
| **INC.,** | ] | |
| | ] | |
| **Third-Party Defendant.** | ] | |

## MEMORANDUM OPINION

This declaratory-judgment action involves the interpretation of policy provisions related to uninsured motorist coverage. It comes before the court on Plaintiff Auto-Owners Insurance Company's "Motion for Summary Judgment" (doc. 44) and Third-Party Defendant The Parnell Insurance Agency's "Motion for Summary Judgment" (doc. 43). The court will GRANT both motions.

In 2013, Brian Morris and his business, "B&C Industries," obtained automobile insurance with Auto-Owners through Parnell Insurance Agency. The original named insured on that Policy was "B&C Industries," the trade name of a sole proprietorship run by Mr. Morris. In March 2014, Parnell Insurance changed

1

the named insured on the Policy from B&C Industries to "BC Industries LLC," a limited liability company incorporated by Brian Morris's wife, Cherise Morris.

In May 2014, the Morrises, while riding a motorcycle owned by Ms. Morris, suffered injuries in a wreck. Because the at-fault motorist had insufficient coverage to pay the Morrises' bills and because the Morrises did not have their own uninsured motorist coverage on the motorcycle, the Morrises claimed uninsured motorist benefits from Auto-Owners based on the Policy's uninsured motorist coverage.

Auto-Owners asks for a declaratory judgment that the Policy does not provide the Morrises uninsured motorist coverage for damage or injuries relating to the motorcycle accident. Auto-Owners asserts that the Morrises are not entitled to uninsured motorist coverage under the Policy because the first named insured on the Policy was BC Industries LLC, a limited liability company, and, in this case, the uninsured motorist coverage provision only covers the Morrises if the first named insured is an "individual."

The Morrises have filed counterclaims, asserting breach of the Policy and contract reformation. The Morrises want the court to reform the Policy to the original named insured, B&C Industries, a sole proprietorship. To that end, the Morrises claim that both they and Auto-Owners understood and intended the Policy to insure B&C Industries, a sole proprietorship; the Morrises say that

Parnell Insurance unilaterally changed the named insured to BC Industries LLC without their consent. Alternatively, the Morrises claim uninsured motorist coverage under the Policy's "Comprehensive Automobile Liability" endorsement, which, they say, expands the scope of the Policy's coverage.

Finally, the Morrises bring a claim against Parnell Insurance as a third-party defendant, alleging that Parnell Insurance acted negligently or wantonly when it told Auto-Owners to change the named insured on the Policy from B&C Industries to BC Industries LLC.

Auto-Owners moves for summary judgment on all of its claims and all of the Morrises' counterclaims against it. Parnell Insurance moves for summary judgment on the Morrises' sole claim against it. For the reasons discussed below, the court will GRANT both motions. The court will ENTER judgment in Auto-Owners's favor. The court finds that Auto-Owners does not owe the Morrises uninsured motorist coverage under the Policy for the May 6, 2014, motorcycle accident.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews

a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254

(1986); *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).

Furthermore, all evidence and inferences drawn from the underlying facts must be

viewed in the light most favorable to the non-moving party. *Graham v. State Farm*

*Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

## FACTS

Cherise and Brian Morris are entrepreneurs. Brian Morris is the sole

proprietor of a business that he calls "B&C Industries."[1] Cherise Morris filed

articles of organization for a limited liability corporation in Alabama called "BC

Industries LLC" in October 2013. According to the Morrises, their businesses are

separate and conduct different operations. BC Industries LLC employed both

Morrises.

In 2013, Brian Morris obtained insurance for his business, B&C Industries,

through an agent, third-party defendant Parnell Insurance. Although he ran B&C

Industries as a sole proprietor, the Morrises do not dispute that Brian Morris

represented to Parnell Insurance that B&C Industries was a partnership. In

response to Parnell Insurance's subsequent inquiry, Auto-Owners provided two

"New Business Proposals," dated May 23 and 24, 2013, to provide automobile

---

[1] For the purposes of this Opinion, the court assumes, *arguendo*, that B&C Industries was a sole proprietorship. Auto-Owners and the Morrises dispute whether B&C Industries in fact was run as a partnership or sole proprietorship, and a genuine dispute of fact exists about whether Brian Morris had a partner in B&C Industries. But that dispute is not material because, as the court explains below, the issue in this case revolves around the *intent* of the parties in forming the Policy, which is undisputed.

insurance coverage to B&C Industries.  Auto-Owners noted in both proposals that it understood B&C Industries to be a partnership.

B&C Industries accepted Auto-Owners's proposal for auto insurance.  The named insured on the Policy was B&C Industries.  The Policy itself does not indicate whether B&C Industries was a partnership or sole proprietorship.

In March 2014, Parnell Insurance sent an e-mail to Auto-Owners requesting an update for the Policy's mailing address.  The parties dispute whether the Morrises requested any updates to the Policy.  Auto-Owners changed the Policy's mailing address to the address of BC Industries LLC, the limited liability company incorporated by Cherise Morris.

A few days later, Parnell Insurance sent another e-mail to Auto-Owners requesting that the insurer change the named insured on the Policy to "BC Industries LLC."  Parnell Insurance claimed that "[t]here has been no ownership change just the name."  (Doc. 44-6 at 144).  Auto-Owners confirmed the name change to Parnell Insurance, but the parties dispute whether Parnell Insurance or Auto-Owners successfully or sufficiently notified the Morrises about the change in the named insured on the Policy.

On May 6, 2014, Brian and Cherise Morris were injured in an accident when the motorcycle they were driving collided with another vehicle.  At the time of the accident, the motorcycle was owned by Cherise Morris and being used in the

business of BC Industries LLC.  The Morrises accrued damages exceeding the at-fault driver's own insurance coverage, and the Morrises did not have uninsured motorist coverage for Ms. Morris's motorcycle under any policy of their own.  The Morrises thus claimed uninsured motorist benefits under the Policy with Auto-Owners.  Auto-Owners denies that it owes the Morrises such coverage.

Relevant to the issues in this case, the Policy contains two provisions each of which the Morrises say independently covers the May 6, 2014, accident:  the Policy's standard uninsured motorist coverage and the "Comprehensive Automobile Liability" endorsement coverage.

As a general rule, the Morrises may be entitled to uninsured motorist coverage under two scenarios.  First, if the Policy provides liability coverage for the motorcycle, then Alabama law requires that the Policy provide uninsured motorist coverage in an equal amount unless the insured rejects uninsured motorist coverage.  *See* Ala. Code § 32-7-23.  Second, if the motorcycle was not covered by the Policy, then the uninsured motorist coverage section extends coverage to persons insured under the Policy; but the Auto-Owners policy only provides uninsured motorist coverage for an automobile *not* covered by the Policy *if* the first named insured is an individual.  The precise language of the Policy governs coverage.

First, the Policy's standard uninsured motorist coverage provision states:

> [Auto-Owners] will pay compensatory damages, including but not limited to loss of consortium, [for] any person [who] is legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE

But, the Policy continues, "[i]f the *first named insured* in the Declarations *is an individual*," the Policy's uninsured motorist coverage extends to injuries the insured sustained when occupying an automobile *not* covered by "SECTION II – LIABILITY COVERAGE."

The Policy does not define the term "individual." The first named insured at the time of the accident was "BC Industries LLC"; prior to March 2014, the first named insured was "B&C Industries." Neither of these first named insureds was an individual.

The section of the Policy titled "SECTION II – LIABILITY COVERAGE" states:

> [Auto-Owners] will pay damages for bodily injury and property damage for which **you** [meaning the first named insured] become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** [meaning the automobile listed in the Declarations] as an automobile.

The motorcycle involved in the May 6, 2014, accident is not listed in the Declarations.

Second and alternatively, the Morrises claim coverage under the Policy's "Comprehensive Automobile Liability" endorsement, which says that "SECTION II – LIABILITY COVERAGE is extended to any automobile." The endorsement adds several exclusions narrowing the scope of that extension of coverage. Most relevant to this case, the "comprehensive" endorsement excludes the insured's employees, "if the automobile is owned by such employee or any member of the employee's household." Here, the motorcycle was owned by Cherise Morris, a member of Brian Morris's household.

## DISCUSSION

This case comes down to two issues: first, whether the Morrises can reform the Policy such that the first named insured refers to an individual, thus covering them under the Policy's standard uninsured motorist coverage; and, second, whether the Morrises have coverage under the Policy's Comprehensive Automobile Liability endorsement regardless of the named insured.

Auto-Owners argues that the Morrises cannot obtain coverage under either theory; the Morrises say the opposite. Auto-Owners is correct. The Morrises' motorcycle is not covered under the uninsured motorist provision under either of the Morrises' theories. Auto-Owners is entitled to summary judgment in its favor on every claim asserted by or against it. And, because the court's findings as to Auto-Owners's motion for summary judgment preclude the Morrises' third-party

claim against Parnell Insurance, Parnell Insurance is also entitled to summary judgment in its favor on the Morrises' claim against it.

This case is about contract interpretation. The court enforces unambiguous insurance contracts as they are written. *Progressive Specialty Ins. Co. v. Green*, 934 So. 2d 364, 367 (Ala. 2006). Whether a contract is ambiguous is a question of law for the court. *Universal Underwriters Ins. Co. v. Thompson*, 776 So. 2d 81, 84 (Ala. 2000) (citing *General Aviation, Inc. v. Aerial Services, Inc.*, 700 So. 2d 1385 (Ala. Civ. App. 1997)). The court may find that ambiguity exists if a contract provision is "capable of more than one meaning." *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997). But courts do not have the power to rewrite contract language to provide coverage when not intended by the parties. *Am. Nat'l Prop. & Cas. Ins. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1295 (S.D. Ala. 2001).

### A. Reformation of the Policy & Standard Uninsured Motorist Coverage

In response to Auto-Owners's motion for summary judgment (and as part of their counterclaim), the Morrises argue that they are entitled to coverage under the Policy through the standard uninsured motorist provision *if* the court reforms the Policy to reflect an "individual" as the named insured. The court, however, cannot reform the Policy to favor the Morrises' position.

Under Alabama law, a business run as a sole proprietorship is legally no different than the individual to whom the business belongs. *Carolina Cas. Ins. Co. v. Williams*, 945 So. 2d 1030, 1035 (Ala. 2006) ("Alabama law makes no distinction between an individual and a sole proprietorship operated by the individual. They are considered the same for legal purposes."). A partnership, however, is a legally distinct entity from its individual owners. *See* Ala. Code § 10A-8-2.01 ("A partnership is an entity distinct from its partners."). Likewise, an Alabama limited liability company is a separate legal entity from its owners. *Id.* § 10A-5A-1.04.

In this case, the parties appear to agree that if the Policy named a sole proprietor as the first named insured, it named an "individual," but if the Policy named a partnership or limited liability corporation, it did not name an "individual." And the parties do not dispute that, at the time of the accident, the Policy, in fact, named a limited liability corporation, BC Industries LLC, which is not an individual.

So the only way the Morrises can recover through the Policy's standard uninsured motorist coverage provision is through reformation. Reformation is available to reflect the real intent of the parties and establish the "true agreement" between parties. *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So.

2d 1060, 1064 (Ala. 1978). At the same time, reformation is *not* available to make a new agreement. *Id.*

The Morrises ask for reformation of the contract based on what they call a "mutual mistake." They claim that both B&C Industries (*i.e.*, Brian Morris) and Auto-Owners understood the Policy at the time they formed it to cover B&C Industries, a sole proprietorship and thus Brian Morris individually. The Morrises thus assert that the court can and should reform the Policy to reflect that mutual understanding.

The undisputed facts betray that position. The Morrises show no evidence that Auto-Owners understood or intended the Policy, when formed, to cover B&C Industries, *a sole proprietorship*. And, on the other hand, Auto-Owners shows that Brian Morris told Parnell Insurance that B&C Industries was a partnership, a fact that the Morrises do not dispute. Parnell Insurance originally asked Auto-Owners to provide an insurance policy for B&C Industries, *a partnership*.

Consequently, Auto-Owners's actions showed it intended to insure a partnership. The "New Business Proposals" Auto-Owners generated in issuing the Policy referred to B&C Industries as a partnership. The record contains no evidence that Auto-Owners at any point knew or thought that B&C Industries was a sole proprietorship; rather, Auto-Owners intended to insure and understood that it was insuring a partnership.

Presented these facts, a reasonable jury would be unable to conclude that Auto-Owners intended to enter into an insurance contract with a sole proprietor or individual. Both parties acted as if they were entering into a contract for a partnership, a non-individual.

Stated another way, a reasonable jury would be unable to conclude that B&C Industries and Auto-Owners had a meeting of the minds to enter into a contract to insure a sole proprietorship or an "individual." And a claim for reformation fails where the claimant "fail[s] to prove that the parties had a meeting of the minds at the time of the contract on the version of the contract" urged by that claimant. *Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 568 F. App'x 884, 885 (11th Cir. 2014) (applying Alabama law) (unpublished decision).

If the court were to reform the Policy, it would have to reform it to the version on which the parties had a meeting of the minds, that is, with B&C Industries, a *partnership*, as the named insured. But such a reformation provides no help to the Morrises because neither limited liability corporations nor partnerships are "individuals."

That B&C Industries was really a sole proprietorship or that Mr. Morris may have intended to obtain a policy to insure a sole proprietorship does not matter. The only intent that Mr. Morris actually manifested was to insure B&C Industries as a partnership. The court cannot reform the Policy to mean anything other than

the expressed intent of the parties, and the undisputed facts show only that the parties intended and understood to insure B&C Industries, a partnership, a non-individual.

Because the court cannot reform the Policy to both reflect the expressed intent of the parties and refer to the first named insured as an "individual," the Policy does not provide uninsured motorist coverage to the Morrises unless the motorcycle was covered under the Policy.

### B. Coverage Under the "Comprehensive Automobile Liability" Endorsement

The Morrises' second point in response to Auto-Owners's motion for summary judgment—that the "Comprehensive Automobile Liability" endorsement extends the Policy's uninsured motorist coverage to them—also fails.

The Morrises argue that, because the endorsement extends the scope of Section II, which defines the Policy's liability coverage, to "any automobile," the uninsured motorist provision's scope, which references "an automobile that is covered by" Section II, must likewise extend to "any automobile where there is liability coverage" as defined in "SECTION II – LIABILITY COVERAGE." (Doc. 51 at 13).

But even if the Morrises correctly interpret the effect of the "Comprehensive Automobile Liability" endorsement to provide liability coverage for the motorcycle to BC Industries LLC, the endorsement excludes the Morrises for

uninsured motorist coverage because they were BC Industries LLC's employees and Cherise Morris, a member of Brian Morris's household, owned the motorcycle.  So even assuming that the endorsement's extension of liability coverage also extends the Policy's uninsured motorist coverage (which normally covers only the automobiles listed in the declarations) to the motorcycle, the exclusions eliminate the Morrises from the category of *people* who can recover uninsured motorist benefits.

In other words, assuming the endorsement provides BC Industries LLC with coverage for any liability it may face because of an accident caused by an employee operating the employee's automobile while on business for BC Industries LLC, the protection does not extend to the employee for liability or uninsured motorist coverage.  The owner of the automobile is expected to carry insurance on that automobile that would protect the owner and occupants of the vehicle.

The Morrises' last resort is their argument that the endorsement's exclusions merely leave out people, not automobiles.  The Morrises seem to say that if the endorsement covers the automobile they were driving, the endorsement covers its occupants even if those occupants fall into one of the excluded categories.  However, the Morrises do not appreciate the unambiguous text of the endorsement, which states that "this coverage extension" does not apply to people covered by an

exclusion. While the coverage endorsement provides liability coverage to BC Industries LLC, because the Morrises fall into at least one of the excluded categories they are not covered for liability or uninsured motorist coverage because of the employee exclusion in the endorsement, and the named insured is not an individual. The exclusions are pointless interpreted any other way. *See Ex Parte Homes of Legend, Inc.*, 831 So. 2d 13, 16 (Ala. 2002) (holding that courts should give effect to all provisions to best uphold the contract's terms). Because the Policy does not provide uninsured motorist coverage to the Morrises, the court will GRANT Auto-Owners's motion for summary judgment.

### *C. Third-Party Negligence Claim Against Parnell Insurance*

The court briefly concludes with the Morrises' third-party negligence claim against Parnell Insurance and Parnell Insurance's motion for summary judgment on that claim. The Morrises allege that Parnell Insurance negligently changed the named insured on the Policy from B&C Industries to BC Industries LLC. They say that "[a]s a proximate and direct result" of Parnell's negligence, "Brian and Cherise Morris were allegedly without the uninsured/underinsured motorist coverage bargained for under the policy and instead were immediately harmed and left exposed to tremendous medical expenses and damages." (Doc. 25 ¶ 61). That claim must fail given the above findings.

Even if the court were to reform the Policy and undo Parnell Insurance's actions, it would have to find, as discussed above, that the parties mutually agreed to insure B&C Industries as a partnership. And so even if Parnell Insurance had not changed the Policy, the Morrises would still lack uninsured motorist coverage under the Policy for the May 6, 2014, motorcycle accident. Because Parnell Insurance's actions, negligent or not, make no difference as to whether the Morrises can recover uninsured motorist benefits under the Policy, Parnell Insurance did not proximately cause any injury claimed by the Morrises. *See Lemley v. Wilson*, 178 So. 3d 834, 842 (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994), and stating that "[p]roximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.").

The court will therefore GRANT Parnell Insurance's motion for summary judgment and ENTER SUMMARY JUDGMENT in Parnell Insurance's favor on the Morrises's third-party claim against it.

## **CONCLUSION**

No matter how the Morrises slice it, the Policy does not provide them coverage for the May 6, 2014, accident. For the reasons stated, the court will GRANT Auto-Owners's motion for summary judgment. The court will also GRANT third-party defendant Parnell Insurance's motion for summary judgment.

The court will ENTER SUMMARY JUDGMENT in Auto-Owners's favor on the Morrises' counterclaims against it and ENTER SUMMARY JUDGMENT in Parnell Insurance's favor on the Morrises' third-party claims against it. The court will DECLARE that Auto-Owners does not owe Brian or Cherise Morris uninsured motorist coverage under the Policy for the May 6, 2014, motorcycle accident.

Because this Opinion resolves all claims involved in this case, the court will issue a Final Order and enter Judgment in Auto-Owners's favor.

**DONE** and **ORDERED** this 29th day of March, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT
JUDGE